**Felix ADAMS a/k/a Felix X. Adams, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–76–45.**

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1976.

E. Terril Corley, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Felix Adams, hereinafter referred to as defendant, was charged, tried and convicted of the crime of Robbery with Firearms in violation of 21 O.S.1971, § 801, in the Tulsa County District Court, Case No. CRF–74–2401. Jury trial was held, after which the jury returned a verdict of guilty. After some subsequent and interim proceedings, on the 14th day of July, 1975, the defendant was formally sentenced to serve a period of not less than

ten (10) years, nor more than twenty (20) years imprisonment. From said judgment and sentence, the defendant files this appeal.

Since we are of the opinion that this case contains error, we do not deem it necessary to set forth the testimony adduced on the trial.

The assignment of error urged by defendant dispositive of this appeal is that the trial court erred in not setting aside the judgment and sentence because the defendant was insane at the time of his trial. We find that this argument has merit and is, in fact, supported by the record. The provisions of 22 O.S.1971, § 1161, provides in pertinent part:

"An act done by a person in a state of insanity cannot be punished as a public offense, nor can a person be tried, adjudged to punishment, or punished for a public offense, while he or she, as the case may be, is insane; . . ."

The chronological events of this case are as follows: Some time, either immediately before or during the jury trial of this defendant, one of his attorneys, at the suggestion of another defense counsel, went to the county jail where the defendant was incarcerated, to determine in their minds whether the defendant was mentally ill. At the time of judgment and sentence of the defendant—July 14, 1975—the defense attorney informed the court as to the following:

". . . We interviewed Mr. Adams approximately thirty minutes in the old tank, in the visiting tank on the 8th floor at that time, and I informed Mr. Durbin that there was no way I could testify that the defendant was insane. At that time he appeared rational and it was agreed to by Mr. Durbin at that time he appeared rational. Then I agreed to assist Mr. Durbin in the trial of the case. The trial was held and the defendant exhibited bizzarre behavior. He was un-cooperative. He was apparently looking for bugs in the area along the railing and on the floor. We really did not know whether he was faking or not. We were inclined to believe he may be. He didn't testify. He apparently was not rational enough to aid in his defense. We actually talked him out of testifying. . . ." [Tr. 225]

During the course of the jury trial, and while out of the hearing of the jury, defense counsel inquired on the record as to why defendant Adams was being restrained by the deputy sheriff of Tulsa County. At that time the trial court made an inquiry, not under oath, of Deputy Sheriff Lynch concerning the conduct of the defendant. [Tr. 180] The deputy stated to the court:

". . . [B]ut this fellow we have to take a blanket away from him every time we come—bring him to court. He has got a sheet of paper and an old book in there, and he rolls it up and he cuddles it up like a doll. . . ."

At this point the trial continued, with a verdict of guilt against the defendant.

Approximately fourteen days after the commencement of the trial, the defendant was brought before the trial court for the purpose of formal judgment and sentence. At this point, the record reveals that the defendant was totally unresponsive. It was pointed out, by defense attorney, that the Department of Corrections had been unable to prepare a pre-sentence investigation report due to their inability to communicate with defendant. The Assistant District Attorney then asked for a recess in order to prepare an application to send the defendant to Vinita for sixty days' observation. A few minutes later the State refused to file the application and the court then, on its own motion, directed that an application be filed and the court ordered the defendant sent to the Eastern State Hospital at Vinita for observation.

On February 13, 1975, the Tulsa County District Court received a letter, over the signature of Dr. Joe E. Tyler, Acting Superintendent of Eastern State Hospital, stating, in part:

". . . We have completed our evaluation of Mr. Adams and the staff is of the opinion that he is insane according to the laws of the State of Oklahoma and in need of psychiatric care and treatment. . . ."

On the 12th day of February, 1975, the defendant was released to the custody of the Tulsa County Sheriff's Office, brought back to Tulsa, and on the 20th day of March, 1975, tried before a jury and found to be insane (Case No. CRF-74-2401). On the 26th day of March, 1975, the defendant was committed to the Eastern State Hospital at Vinita, Oklahoma. On the 30th day of June, 1975, the Tulsa County District Court received a letter, over the signature of Dr. Joe E. Tyler, Acting Superintendent of Eastern State Hospital, stating, in part:

"As a result of a recent evaluation it is the opinion of our staff that Mr. Adams has improved where he could be released from the hospital and is no longer considered insane according to the laws of the State of Oklahoma. . . . He should continue with this medication to prevent a relapse of his mental condition."

On June 26th the defendant was released to the custody of the Tulsa County authorities and on the 14th day of July, 1975, a hearing was held for formal judgment and sentence at which time the defendant was sentenced to not less than ten (10) years nor more than twenty (20) years imprisonment. At the hearing on pronouncement of judgment and sentence Dr. Garcia was called as a witness for the defendant in support of his Motion for a New Trial. The record reveals that Dr. Garcia is a forensic psychiatrist, employed by the State of Oklahoma, at Eastern State Hospital at Vinita, Oklahoma. At page 243, the doctor testified, as follows:

"Q. Doctor, is it your testimony that when you saw him—I believe it was your testimony it was the 31st day of January, 1975?

"A. Yes, sir.

"Q. —that he was insane at that time?

"A. Yes, augustly insane in your legal term.

"Q. Allright sir, Doctor, at that time— if you first saw him on the 31st of January, 1975, at that time would he have been able to aid counsel in his own defense?

"A. We don't believe so. I don't believe so absolutely."

Subsequently, the doctor went on to testify that it took several years for a person to become as mentally ill as the defendant was, in his opinion. At page 250 of the transcript, the doctor testified on cross-examination of the State, as follows:

"Q. Did you state whether he knew right from wrong on the 17th of January, 1975?

"A. As I mentioned, I had not been seeing him at the time, but based on diagnosis most likely he was quite incompetent during that time.

"Q. But you can't state that to be a fact. To make that evaluation you would have to examine him?

"A. Yes, sir, just a few days or just one or two weeks before the case we had some kind of a diagnosis."

Finally, at page 252 of the transcript, and upon questioning by the trial court, the following appears:

"Q. Can you state for a fact, Doctor, that Felix Adams at the time of his trial was not able to aid and assist his counsel in his defense if he wanted to?

"A. I did not see him. But I am basing my own professional opinion based on the severity of the illness. It's possible that he was not quite capable at the time during his trial. There was a question, or there was some doubt in his mental capacity."

Further examination, both direct and cross, was directed toward the doctor concerning whether or not a lay person, such as an attorney, could recognize such mental illness in an individual. Further, as to whether or not a lay person might tend to feel the defendant was faking mental illness in order to avoid trial.

Therefore, this Court is of the opinion that a serious question was raised as to the sanity of the accused at the time of his trial. We totally agree with the statement made by one of the attorneys that it would have been best to have had this defendant examined prior to trial.

The Attorney General argues that the above and foregoing does not require reversal primarily because if the defendant had been as insane as the doctor so testified at the time of the trial, then a lay person, such as the defense attorney, would have been aware of same. In light of the record before us and the facts as above set forth, we cannot agree with this conclusion. From the evidence and the testimony as above set forth, we are of the opinion that the defendant was laboring under such mental illness as to be incapable of understanding the nature and consequences of the trial proceedings and also incapable of assisting counsel in the preparation of his defense.

We, therefore, hold that the trial court erred in overruling defendant's Motion for New Trial, and further hold that this case be *REVERSED AND REMANDED,* and the defendant granted a new trial.

BRETT, P. J., and BLISS, J., concur.